**HENRY v. HARRIS. ***
Patent Appeal No. 2899.

Court of Customs and Patent Appeals.
April 4, 1932.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (Arthur H. Boettcher, of Chicago, Ill., of counsel), for appellant.

*Rehearing denied May 23, 1932.

Kwis, Hudson & Kent, of Cleveland, Ohio (Watts T. Estabrook, of Washington, D. C., and B. M. Kent, of Cleveland, Ohio, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences, awarding priority to Harris.

The claimed invention is directed to the use, in spring shackles for automobiles, of bushings, composed of elastic material, arranged to accommodate the pivotal movement between the parts by the yielding of the bushing material. That is to say, the elastic bushing is so placed with reference to the shackle bolt and the eye through which the bolt runs that, when the vehicle body moves up and down, torsion occurs in the bushing, which, it is stated, "minimizes wear, eliminates rattle, and avoids the necessity of lubrication."

Eleven counts are involved. Since none of them requires construction, and their literal quotation does not appear to be necessary to a clear understanding of the issues presented, none is quoted. We deem it proper, however, to quote from appellant's brief his classification of said counts:

"The counts are appropriately classified as follows:

"Counts 3, 4, 5 and 6—which go broadly to the bearing and bolt and an elastic tubular bushing expanded or compressed therebetween, counts 4, 5 and 6 bringing in the connecting link or links with varying particularity and claims 3, 4 and 6 specifying that the bushings shall be expanded into tight engagement with the surface of the bolt and the inner face of the bearing; and

"Counts 1, 2, 7, 8, 9, 10 and 11—which treat the bushing and its directly associated parts more narrowly.

"The counts of this latter group are appropriately classified as follows:

"Counts 1 and 2—which specify the bushing as of rubber, the latter also specifying the bushing as projecting beyond the ends of the eye;

"Count 7—which specifies the bushing as consisting of two abutting parts extending into the opposite ends of the eye; and

"Counts 8, 9, 10 and 11—which are limited to confining the outer ends or heads of the bushing."

The main issue, as stated by the appellant, Henry, is whether the senior party, Harris, showed diligence toward that constructive reduction to practice which resulted from the filing of his application for patent on June 27, 1925.

Appellant also states as questions of fact:

(1) Does Henry's device of March, 1925, embody the invention of counts 3, 4, 5, and 6?

(2) Does Harris, in his patent application, disclose the invention of counts 8, 9, 10, and 11?

Appellant treats the second of the above queries as a mixed question of fact and law.

In his decision, the Examiner of Interferences awarded Harris a date of "at least as early as May 19, 1925," for conception. For reduction to practice he was held to be limited to his filing date of June 27, 1925, although Harris contended that as to all except counts 9, 10, and 11 he was entitled to a date for such reduction to practice as early as June 18, 1925.

The Board of Appeals found no specific date of conception on the part of Harris, but said: " * * * In our opinion the evidence clearly shows that the party Harris had conceived the subject matter of all of the counts prior to the date of conception awarded to appellant [Henry]. * * * "

The decision of the Examiner of Interferences awarded Henry conception as of June 10, 1925, and reduction to practice as of June 18, 1925. The Board of Appeals accepted these findings as correct. Henry's filing date was July 17, 1925.

Henry has insisted, however, that he is entitled to earlier dates of both conception and reduction to practice, basing this claim largely upon the fact that in the latter part of 1924 he began some activity, or at least indulged some thought, relating to a plan for preventing wear between the shackle bolts and the spring eyes and spring horns, that early in 1925 he decided to utilize brake lining for this purpose, and that during the first week in March he applied such brake lining to a car as a bushing, which bushing of brake lining remained on the car until June 18, 1925.

In arguing this point, particular reference is made by appellant to counts 3, 4, 5, and 6.

The Examiner of Interferences and the Board of Appeals pointed out that each of these counts called for a bushing element consisting of "an elastic tubular" member, or portion, instead of the bronze bushing theretofore used, and agreed in holding that the word "elastic" is not broad enough to cover the material of which brake lining is composed.

We find no error in this holding. While, as appellant insists, the brake lining bushings may have lasted from early in March until they were removed, apparently to make way for bushings of rubber, on June 18th, still the lasting quality is not the essential characteristic of the bushings in the claimed invention. The counts call for elastic bushings, and it is not thought that the asbestos material of the brake lining can be held to meet the requirement of elasticity, as contemplated by both applications.

Appellant also insists that Harris is not entitled to make the claims which became counts 8, 9, 10, and 11, because, it is alleged, he (Harris) failed to disclose a structure showing the required means to confine the outer ends or heads of the bushings and prevent expansion.

This question was first raised by a motion to dissolve these and other counts made by Henry. The motion was overruled by the Law Examiner, and Henry, under Patent Office rule 130, requested, first, the Examiner of Interferences, and then, upon appeal, the Board of Appeals, to reinvestigate the question in view of the proofs.

Those tribunals complied and agreed in sustaining the finding of the Law Examiner, which, in effect, was that the difference between the respective elements to whose function the contention relates was, "at least, a mere difference in degree."

The Examiner of Interferences said: " * * * Exhibit T of Harris, which this tribunal relies upon as establishing conception, clearly supports every limitation of all of the counts in issue. * * * "

A very careful examination of the testimony relating to this issue has been made by us, with the result that we are not convinced of any error either of law or fact in the concurring findings thereon of the three tribunals of the Patent Office. The authorities cited by appellant do not appear to us to be applicable to the facts in the case before us.

This leaves to be considered only the question of whether Harris was diligent.

Accepting, as we do, the concurring findings of the tribunals of the Patent Office as to the respective dates awarded the parties

for conception and reduction to practice, it is quite obvious that the activities of both were proceeding somewhat concurrently, and that all of said activities, from and including conception to and including the filing of applications for patent, took place within relatively brief periods of time.

Henry conceived June 10, 1925, reduced to practice June 18, 1925, and filed application July 17, 1925. So his activities, so far as here pertinent, covered a period of five weeks. Harris conceived at least as early as May 19, 1925, and filed the application which constituted constructive reduction to practice, June 27, 1925. So the pertinent activities of Harris likewise covered a period of approximately five weeks.

It is noted that the time between Henry's actual reduction to practice (June 18, 1925) and the filing date of Harris (June 27, 1925) was nine days.

The period during which Harris must have been diligent in order to prevail, in view of Henry's actual reduction to practice having been prior to the filing date of Harris, was that period immediately preceding June 10, 1925, Henry's date of conception up to his (Harris') filing date.

It therefore becomes important to inquire into the activity of Harris relative to the matter during said period.

In order to get the true perspective of the situation, we properly may consider the doings of Harris even earlier than the date awarded him for conception. As early as April 18, 1925, he is shown to have directed his patent attorney at Cleveland, Ohio, to proceed with the preparation of an application and to have furnished said attorney, on April 28, 1925, with a drawing for use in preparing it. He had shown him a rough sketch as early as April 14, 1925.

Harris thereafter is shown to have made other sketches, including one filed as Exhibit T, made on May 18, 1925, and exhibited to his brother on May 19, 1925. The award of conception date was based particularly upon this exhibit. In the early part of June he made other drawings which were sent to different manufacturers for making parts for a model. These parts were assembled by June 15, 1925, on which day he took the model to Cleveland to show it to his attorney. The attorney was absent from the city. On June 20, 1925, Harris returned to Cleveland, and was informed that his attorney was still away and would not be back at his office before June 25th, but was informed that the application had been drawn and he signed same on that day. Returning to his attorney's office on June 25, 1925, he demonstrated the model, the application was examined and discussed, and, it being decided that it was sufficient, it was, on that day, mailed to the Patent office, where it was filed on June 27, 1925.

The testimony of the attorney was taken in the case, and we agree with the Board of Appeals in the finding that his evidence satisfactorily establishes the fact that the application was virtually completed in the attorney's office by June 11, 1925, which was the day following the date awarded to Henry for conception.

This court, following numerous decisions of other courts, has many times held that we will not disturb the concurring findings of the tribunals of the Patent Office, unless palpable and manifest error has been committed. Stern et al. v. Schroeder et al., 36 F. (2d) 518, 17 C. C. P. A. 690, 697; Clancy v. De Jahn, 36 F.(2d) 131, 17 C. C. P. A. 714, 715; Bennett v. Fitzgerald, 48 F.(2d) 917, 18 C. C. P. A. 1201, 1202.

The earnest argument of appellant's counsel upon the several questions presented has been given careful thought, and the testimony has been carefully examined. We think this testimony leads inevitably to the conclusions of fact which have been briefly recited.

In Jones v. Evans, 46 F.(2d) 197, 203, 18 C. C. P. A. 866, 875, this court said: " * * * Each case where diligence is involved, rests and must be decided upon its own facts, and all the surrounding circumstances must be viewed and considered in determining whether there was sufficient diligence."

Under the facts of the instant case and the surrounding circumstances, we fail to see wherein Harris was lacking in a degree of diligence entirely sufficient to satisfy all reasonable requirements of justice and law.

The decision of the Board of Appeals is affirmed.

Affirmed.